1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

8

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No.: 98-cr-40082-YGR |
| Plaintiff, | **ORDER RE MOTION FOR SENTENCE REDUCTION DUE TO COMPASSIONATE RELEASE** |
| v. | |
| **KEVIN LEE DAVIS,** | DKT. NO. 1966 |
| Defendant. | |

14      Defendant Kevin Lee Davis is currently in the custody of the Bureau of Prisons ("BOP")

15  and incarcerated at the Federal Corrections Institute in Herlong, California ("FCI Herlong").  Mr.

16  Davis moves for an order modifying his sentence pursuant to 18 U.S.C. section 3582(c)(1)(A).  Mr.

17  Davis requests that the Court reduce his sentence to time served with the balance of the period of

18  his original sentence imposed as a period of supervised release with home confinement and such

19  other conditions as the Court deems just.  The Government opposes the motion.

20      The Court has jurisdiction to grant the relief requested[1] and, having carefully considered the

21  papers and evidence submitted in support of and in opposition to the motion, the Court is inclined

22  to grant the motion for the reasons set forth herein.

23  **I.      APPLICABLE STANDARD**

24      The Court may modify a previously imposed sentence upon motion of the BOP or motion

25  of the defendant under the compassionate release provision of 18 U.S.C. section 3582(c)(1)(A), as

26

27      [1]  The Government concedes that the Court has jurisdiction given that 30 days have elapsed
28  since Davis submitted a request for compassionate release on June 19, 2020 to the warden at FCI
Herlong.

United States District Court
Northern District of California

1    amended by the First Step Act which added a provision to allow defendants, not only the Director

2    of the BOP, to file a motion for reduction of sentence after exhausting administrative remedies or

3    waiting 30 days after the warden's receipt of a request.  *See United States v. Rodriguez*, 424

4    F.Supp.3d 674, 680 (N.D. Cal. 2019).  When the Court has jurisdiction over a defendant's motion,

5    section 3582(c)(1)(A)(i) provides that the Court may reduce an imposed prison term if the Court

6    finds that "extraordinary and compelling reasons warrant such a reduction," any "reduction is

7    consistent with applicable policy statements issued by the Sentencing Commission," and after

8    considering the applicable factors set forth in 18 U.S.C. section 3553(a).  The Ninth Circuit has

9    held that the current version of United States Sentencing Guideline section 1B1.13 "is not an

10   applicable policy statement" for defendant-filed motions for compassionate release, such as the

11   motion at issue here.  *United States v. Aruda*, 99 F.3d 797, 802 (9th Cir. 2021).[2]

12         While the Section 1B1.13 policy statement is no longer binding, it may still "inform the

13   district court's discretion" for what constitutes extraordinary and compelling reasons warranting

14   release.  *Id.* at 802.  The policy statement outlines that "extraordinary and compelling reasons"

15   include: (1) medical conditions which diminish the ability of the defendant to provide self-care in

16   prison, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and

17   compelling reasons that exist either separately or in combination with the previously described

18   categories.  USSG § 1B1.13, Application Note 1(A).

19   **II.    DISCUSSION**

20         Mr. Davis was sentenced to a mandatory life sentence after he was convicted of Continuing

21   Criminal Enterprise ("CCE") for leading a cocaine-trafficking organization.  *See* 21 U.S.C. §

22   848(b).  A jury also convicted Mr. Davis on four conspiracy charges, all counts of possession with

23   intent to distribute cocaine, twenty-three counts of use of a telephone to further a drug crime, 21

24   travel counts, and eight money-laundering counts.  Before his trial, Mr. Davis was offered a plea

25   deal for 27 years, however, he rejected the deal and was sentenced to life after his jury trial.

26

27            ────────────────────
           [2]  The Government's objection to the motion primarily concerns the factors that the Court
28   can consider.  The Government primarily contends that *Aruda* was wrongly decided and that the
     policy statement is binding.  This Court, however, is bound by the Ninth Circuit.

United States District Court
Northern District of California

Mr. Davis has been in federal custody since June 3, 1998 and has been incarcerated for 23 years.[3]  The Government does not contest that Mr. Davis has accepted responsibility for his conduct, that Mr. Davis has had a clean disciplinary record over the last ten years, that the risk Mr. Davis poses to the community has been mitigated, that Mr. Davis has a low risk of recidivism, and that a reduction of Davis' sentence would mitigate unwarranted and substantial sentencing disparities between Davis and others subject to drug convictions, whether similarly situated or not. Mr. Davis also has strong ties to his family members who have offered to support Mr. Davis if he is released.

There is no dispute that the non-violent crimes that Mr. Davis was convicted of are serious offenses and that deterrence was furthered by the initial sentence.  However, the Court notes that there have been significant changes in federal and state law, such that defendants who are convicted of the same conduct as Mr. Davis would be subject to a lesser sentence today.  *See, e.g.*, *United States v. Quinn*, 467 F. Supp. 3d 824, 827-28 (N.D. Cal. 2020) (finding extraordinary and compelling reasons because the defendant "was sentenced under a far more draconian federal sentencing regime than exists today" and outlining median sentences for murder, sexual abuse, and kidnapping); *see also United States v. McGee*, No.12-CR-00052-EMC, 2021 WL 1660251, at *1-2 (N.D. Cal. Apr. 26, 2021) (considering sentence changes in reducing drug conviction).  Indeed, courts have granted sentence reductions to CCE defendants whose offense was coupled with extreme violence.  *See, e.g.*, *United States v. Rodriguez*, 492 F. Supp. 3d 306 (S.D.N.Y. 2020) (reducing sentence to life served for inmate that murdered a confidential informant in connection with the drug trafficking charge).[4]  While Mr. Davis was convicted under the CCE statute, his offense was not associated with any violent crimes and there were no direct victims of his crimes.

---

[3]  When good time is considered, Mr. Davis has been imprisoned for as long as his initial plea deal.

[4]  The Court also acknowledges that defendant's counsel has cited to many instances where courts have reduced life sentences for CCE defendants and that counsel has diligently highlighted statistical disparities throughout the country, the Ninth Circuit, and this district.  Those statistics show that Mr. Davis' conviction is a significant outlier.  Again, it is compelling that the Government does not dispute these statistics and accepts the gravity of their truth.

Mr. Davis's conduct has been exemplary in prison.  As noted by the government, his risk of recidivism is low and his disciplinary record has been clear for a decade.  Mr. Davis's disciplinary record also does not include any serious violations.  In addition to a clear record, Mr. Davis has also pursued educational opportunities and has received outstanding ratings as a barber, and Mr. Davis hopes to leverage the skills that he has acquired if released.  He has also mentored inmates that have been released and hopes to continue mentoring at-risk-youth.  Indeed, one of the individuals that Mr. Davis mentored while incarcerated, who also had a life sentence, has gone on to receive a college education and has offered Mr. Davis work at his non-profit if Mr. Davis is released.  Despite his confinement, Mr. Davis has been a continuous source of mental and emotional support for his family, including a child that is not his biological relative, and his family is ready to support him if he is released.

The Court acknowledges that each of the above circumstances taken individually would not be sufficient in terms of justifying a reduction of Mr. Davis' sentence.  For instance, consideration of sentence disparities alone would contravene the Sentencing Commission's determination against retroactive application of the reduction in offense levels for drug offenses.  However, collectively, the circumstances are extraordinary and compelling to warrant a reduction in Mr. Davis' sentence.  Furthermore, as shown in this order, the Section 3553(a) factors weigh in Mr. Davis' favor and the government effectively agrees.  The Court finds that the combination of factors in defendant's counsel's thorough brief do in fact warrant relief.  The sincerity of Mr. Davis's efforts with respect to his rehabilitation are further manifest by the fact that he had no reason to expect that he would ever see the outside of the prison walls once sentenced to life.

However, the Court has insufficient information with respect to a release plan.  The parties and U.S. Probation shall meet and confer and provide the Court with a supplemental filing(s) regarding a release plan by no later than November 30, 2021.

IT IS SO ORDERED.

Date: November 9, 2021

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE

cc: U.S. Probation

4